UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Michele Zangri,
     Plaintiff

     v.                                    Case No. 19-cv-408-SM
                                         Opinion No. 2020 DNH 121
Unit4 Business Software, Inc.
and Unit4 Business Software
Holdings B.V.,
     Defendants


**O R D E R**

Michele Zangri, plaintiff, brought this action against
defendants, Unit4 Business Software, Inc. and Unit4 Business
Software Holdings, B.V. (collectively, "Unit4"), asserting
federal and state employment-related claims.  On January 23,
2020, Zangri filed a second amended complaint, adding additional
factual allegations, as well as five new federal and state
claims (wrongful termination, retaliation, and violation of New
Hampshire's whistleblower protection statute).  Defendants have
moved to dismiss those newly asserted claims.  See generally
Fed. R. Civ. P. 12(b)(6).  Zangri objects.  For the reasons
discussed, defendants' motion to dismiss is denied.


**Standard of Review**

When ruling on a motion to dismiss under Fed. R. Civ. P.
12(b)(6), the court must "accept as true all well-pleaded facts

1

set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010).  Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

### Background

Liberally construing the factual allegations of the complaint in Zangri's favor - as the court must at this juncture - the relevant background is as follows.  Zangri was employed by Unit4 for over 22 years.  From 2015 to 2018, she served as Unit4's CFO.

In 2017, as a result of a customer complaint[1], Zangri grew concerned that Unit4 might be selling software to its customers that did not yet exist.  She raised her concerns with Unit4's CEO, and with Unit4's in-house legal counsel.  Zangri insisted that Unit4 obtain outside counsel to properly investigate the

---

[1]    The complaining customer was a government subcontractor.

matter.  Unit4 agreed.  Outside legal counsel determined that
Unit4 had met its contractual obligations.

Later, Zangri was told that the company's "Global CFO
wanted her moved out of her CFO role."  Compl. ¶ 18.  As CFO,
Zangri's salary had been $154,000 (in addition to potential
bonus earnings, long-term incentives eligibility, and other
benefits).  Zangri was offered the COO role, with a salary of
$164,000, plus bonus, long-term incentives, and other benefits.

Prior to accepting the COO position, Zangri discussed the
role with Scott Kamieneski, Unit4's Regional President (North
America).  During those discussions, Zangri expressed concerns
about gender-based salary inequity at Unit4 – she was paid less
than comparable-level and even lower-level male employees at the
company.  Specifically, several male Unit4 employees who were
"two or three levels below the ranking of CFO" earned
significantly more than Zangri did while serving as CFO.  Compl.
¶ 21.  And, the male employee hired to replace Zangri as CFO was
paid $61,000 more than the salary Zangri earned as CFO.  Id. at
¶ 22.

Kamieneski responded that Zangri's compensation was
consistent with Unit4's salary bands.  He explained that Unit4
sometimes had to pay above those salary bands to attract

3

qualified candidates from outside the company.  Unit4 did not otherwise respond or investigate Zangri's concerns.  But, "because she wanted to continue working at Unit4," Zangri accepted the COO position in February, 2018.  Id. at ¶ 19.

In or about April, 2018, the company asked Zangri to sign off on its audit.  Zangri declined, because "she had been on a leave of absence" during the audit, and was not involved in its oversight.  Id. at ¶ 24.  Zangri also wanted to discuss the 2017 customer complaint, referred to earlier, with the auditors.  She thought that signing off on the audit, as Unit4 requested, would have been illegal, or unethical.  Unit4 did not allow Zangri to raise her concerns regarding the 2017 customer complaint with the auditors, but did agree that Zangri could provide a more limited sign-off on the audit.

On July 21, 2018, Zangri filed a Charge of Discrimination with the New Hampshire Commission for Human Rights, alleging that Unit4 had violated Title VII, N.H. Rev. Stat. Ann. Ch. 354-A, and the state and federal Equal Pay Acts.  In August, 2018, while that discrimination charge was pending, the company increased Zangri's salary to $174,000.  (The previous COO, who was male, had received a salary of $186,000.)  On March 15,

2019, Zangri filed this suit in New Hampshire state court. Unit4 timely removed the case to this court.

On October 28, 2019, Zangri, through her attorneys, complained that Unit4's new CEO, Andrew Brockoff, had become hostile towards her after he learned she had initiated this action.  Brockoff's hostility intensified, resulting in unjust criticism of her work.  Unit4 did not investigate Zangri's complaints.

Seven days later, on November 4, 2019, Unit4 terminated Zangri's employment.  According to Unit4, Zangri's employment was terminated because her position was eliminated.  However, Zangri alleges that the company handled her termination differently than the terminations of male upper-management employees who had not complained about the company.  For example, Zangri was immediately escorted out of the office (in the manner of a "for-cause" termination).  She was not given the notice period, or bonus payout that Unit4 routinely offered to other upper-management employees (who were male, and had not raised complaints about the company).  No announcement regarding Zangri's departure was made to Unit4's employees concerning her decades of excellent service to the company.  Finally, Zangri

was offered a severance package less valuable than the severance
packages offered to non-complaining male employees.

According to Zangri, her employment was terminated in
retaliation for raising concerns of "illegal and/or unethical
business practices, refusing to sign off on an audit without
providing the auditors with full information about the
allegations and concerns, and for raising her equal pay/gender
discrimination concerns[,] and ultimately filing those claims in
court on March 15, 2019."  Compl. ¶ 38.  Zangri's Second Amended
Complaint asserts claims for retaliation (pursuant to Title VII,
the Fair Labor Standards Act ("FLSA"), and N.H. Rev. Stat. Ann.
Ch. 354-A), as well as claims for wrongful discharge, and
violation of New Hampshire's Whistleblower Statute.  Unit4 moves
to dismiss all Zangri's newly asserted claims.

## DISCUSSION

Defendants make two substantive arguments in support of the
motion to dismiss.  First, defendants say, Zangri's new claims
should be dismissed because she fails to sufficiently allege the
requisite causal connection.  Second, with respect to certain
claims, defendants contend that Zangri fails to allege that she

engaged in the requisite protected activity.  Neither argument
is persuasive.

    A.   <u>Protected Activity</u>

    Defendants' second argument, which relates to plaintiff's
wrongful termination and Whistleblower Protection Act claims, is
without merit.

    To state a claim under New Hampshire's Whistleblower's
Protection Act, a plaintiff must allege that she engaged in an
act protected by the statute, that she "in good faith,
report[ed] or causes to be reported . . . what [she had]
reasonable cause to believe is a violation of any law."  N.H.
Rev. Stat. Ann. § 275-E:2.  In a similar vein, to state a claim
for wrongful discharge under New Hampshire law, a plaintiff must
allege "that the plaintiff was discharged for performing an act
that public policy would encourage or for refusing to do
something that public policy would condemn.'"  <u>Fraize v. Fair
Isaac Corp.</u>, No. 17-CV-231-PB, 2017 WL 5001981, at *1 (D.N.H.
Oct. 30, 2017) (quoting <u>Leeds v. BAE Sys., Inc.</u>, 165 N.H. 376,
379 (2013)) (further quotations omitted).

    Defendants contend that plaintiff has not sufficiently
alleged she engaged in a protected activity under the Act, or,
for purposes of plaintiff's wrongful termination claim, activity

that public policy would encourage.  But, defendants' argument,
which focuses almost entirely on Zangri's actions regarding the
2018 audit, and the 2017 customer complaint, largely ignores
plaintiff's complaints of gender-based pay inequities at Unit4.

In the Second Amended Complaint, Zangri alleges she
complained about Unit4's discriminatory practices to Kamieneski,
then filed a gender discrimination charge, and, ultimately, this
action against the company, asserting violations of federal and
state law.  Those actions certainly fall within the purview of
the Whistleblower Protection Act.  See Clark v. New Hampshire
Dep't of Employment Sec., 171 N.H. 639, 654 (2019) ("New
Hampshire's Whistleblowers' Protection Act (the Act) prohibits
employers from retaliating against an employee for reporting or
refusing to participate in what he or she reasonably believes is
a violation of the law").  Those actions also qualify as conduct
public policy would encourage, for wrongful discharge claim
purposes.  See Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 786
(1st Cir. 1990) ("[plaintiff] was discharged because she did not
submit to sexual discrimination in the workplace, clearly a
retaliatory termination from employment.  Sexual discrimination
in employment contravenes New Hampshire public policy.  See N.H.

Rev. Stat. Ann. § 354-A:8.").  Defendants' arguments to the contrary are not persuasive.[2]

   B.   Causal Connection

   Zangri's newly asserted claims require that she sufficiently allege a plausible causal connection between her protected activities and the adverse employment actions taken by the company.  See Posteraro v. RBS Citizens, N.A., 159 F. Supp. 3d 277, 290 (D.N.H. 2016) ("To prove retaliation under state and federal law, [plaintiff] must demonstrate that: 1) she engaged in protected conduct; 2) she was subject to an adverse employment action; and 3) there was a causal connection between the first two factors." (citing Soto-Feliciano v. Villa Cofresi Hotels, Inc., 779 F.3d 19, 30 (1st Cir. 2015)) (emphasis added). See also In re Seacoast Fire Equip. Co., 146 N.H. 605, 608 (2001) ("In the whistleblower context, this requires the claimant to show that: (1) he engaged in an act protected by the whistleblowers' protection statute; (2) he suffered an employment action proscribed by the whistleblowers' protection

---

[2]    Zangri alleges that she complained that Unit4 was engaging in gender discrimination, which is conduct that public policy would encourage, and conduct that falls within the protections of N.H. Rev. Stat. Ann. § 275-E.  Therefore, the court need not determine at this stage whether Zangri's other acts – those relating to the 2017 customer complaint, or the 2018 audit – qualify as acts that public policy would encourage, or are protected under the Act.

statute; and (3) <u>there was a causal connection between the</u>
<u>protected act and the proscribed employment action</u>.") (citations
omitted) (emphasis added).  <u>See also</u> <u>Leeds</u>, 165 N.H. at 379,
("to succeed on a wrongful discharge claim, a plaintiff must
establish two elements: (1) that the discharge was motivated by
bad faith, retaliation or malice; and (2) that the plaintiff was
discharged for performing an act that public policy would
encourage or for refusing to do something that public policy
would condemn.") (internal quotations omitted).

Defendants contend that plaintiff fails to plausibly allege
a causal connection between her protected activities and the
adverse employment actions taken by the company.  Indeed,
defendants stress what they contend is an "enormous gap in time"
between Zangri's purported protected conduct and her
termination.  Defs.' Mem. in Supp. of Mot. to Dismiss at 8.
However, in supporting their argument, defendants ignore or
misunderstand several of Zangri's allegations.  While Zangri's
protected conduct may have begun several months before her
termination, she also engaged in protected activity within a
week of her termination.

Zangri alleges that she complained about gender
discrimination to Kamieneski in early-2018, before she accepted
the COO position, but the company took no action to address her

10

concerns.  Compl. ¶¶ 19-23.  A few months later, she filed a
Charge of Discrimination with the New Hampshire Commission Human
Rights, and, subsequently, in March, 2019, this action.
Notably, Zangri alleges that, when Brockoff, Unit4's new CEO,
learned she had filed a suit against the company, he became
hostile towards her.  Compl. ¶ 33.  That hostility intensified,
resulting in unjustified criticism of her work.  Compl. ¶ 33.
While Zangri fails to assert when Brockoff learned of her legal
action, it is reasonable to infer that it occurred between her
filing of the suit, and October, 2019, when she complained about
his retaliatory conduct.  Zangri alleges that, on October 28,
2019, through counsel, she complained about Brockoff's hostility
and unjust criticism of her work.  Id.  Seven days later, Unit4
terminated Zangri's employment.  Id. at ¶ 34.

    Unit4 claims that Zangri was terminated because her
position was eliminated, but the circumstances pled might be
construed otherwise: she was immediately escorted out of the
office, in the manner of a for-cause termination, id. at ¶ 35;
Zangri did not receive a notice period; nor the bonus payout
routinely offered to comparable male employees who had not
raised complaints; and, she was offered a lower severance

package.  All alleged facts which might well seem inconsistent with separation due to position elimination.

Given the temporal proximity between Zangri's filing of the gender discrimination lawsuit, her complaint about retaliation by Brockoff after he learned of that lawsuit, and her termination seven days later, coupled with Zangri's factual allegations concerning the circumstances and details of her termination, it cannot be said that Zangri fails to plausibly allege a causal connection between her protected activities and her termination.  See, e.g., Guilfoile v. Shields, 913 F.3d 178, 194 (1st Cir. 2019) ("[plaintiff] has plausibly pleaded that he was retaliated against because of his protected conduct, given the close temporal proximity -- about a week -- of his termination to his final conversation with" defendant regarding purported violations of federal law).  Zangri's allegations are sufficient to withstand defendants' motion to dismiss.

            C.  Wrongful Termination Claim

Finally, the court addresses defendants' argument specific to Zangri's wrongful discharge claim.  Relying on Smith v. F.W. Morse & Co., 76 F.3d 413, 429 (1st Cir. 1996), defendants contend that Zangri's wrongful termination claim must be dismissed because federal and state statutory causes of action

exist for the same conduct. But, as this court has previously
noted:

> The post-Smith decisions in Bliss v. Stow Mills, Inc.,
> 146 N.H. 550 (2001), and Karch v. BayBank FSB, 147
> N.H. 525 (2002), clarify that the question of
> statutory displacement is one of legislative intent.
> In Stow Mills and Karch, "the state supreme court
> determined that a common law wrongful discharge claim
> could be maintained notwithstanding that a statute (a
> federal statue in Stow Mills; a state statute in
> Karch) provided both the public policy element of the
> common law claim and a remedy for the policy's
> transgression." True v. DJQ Enters., Inc., No. , 2011
> WL 794330, at *1 (D.N.H. Mar. 2, 2011). The "critical
> issue" under Stow Mills and Karch is not whether there
> exists a statutory alternative, but whether the
> legislature "intended to substitute [that] statutory
> remedy for the common law wrongful discharge cause of
> action." Id. (explaining the import of Stow Mills and
> Karch)(emphasis added).  Unless defendant shows such
> legislative intent, the common law claim is not
> displaced. Id.

Faulkner v. Mary Hitchcock Memorial Hospital, No. 12-cv-482-SM,
2013 WL 60119319, at *1 (D.N.H. Nov. 13, 2013) (additional
internal citations omitted).  See also Keele v. Colonial Imports
Corp., No. 10-cv-336-JD, 2012 WL 1000387, at *2 (D.N.H. March
23, 2012) (defendant failed to demonstrate that state
legislature intended causes of action under RSA 354-A to
displace claims for common law wrongful discharge); Weeks v.
Wal-Mart Stores, Inc., No. 10-cv-336-JD, 2010 WL 3703254, at *3-
4 (D.N.H. Sept. 16, 2010) ("Although [defendant] demonstrated

that VII and RSA 354-A provide remedies for retaliatory discharge, that is insufficient to show preemption.").

Defendants have not demonstrated that the state legislature intended the available statutory remedy for discrimination to displace the common law cause of action for wrongful discharge on that ground.  For that reason, their argument is uncompelling, and their motion to dismiss Zangri's wrongful discharge claim on that basis is necessarily denied.

## CONCLUSION

In fairness to defendants, plaintiff's second amended complaint could be more precise, but plaintiff's allegations are sufficient, as pled, to survive defendants' motion.  For the foregoing reasons, as well as those set forth in plaintiff's memorandum, defendants' motion to dismiss (document no. 30) is **DENIED**.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 13, 2020

cc:  counsel of record